## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TRAVIS G., a child with a　　: CIVIL ACTION
disability, by his Parents, :
JOSEPH G. and STELLA G., and :
JOSEPH G. and STELLA G. on   :
their own behalf　　　　　　: NO. 06-CV-5134
　　　　　　　　　　　　　　:
　　　　vs.　　　　　　　　 :
　　　　　　　　　　　　　　:
THE NEW HOPE-SOLEBURY SCHOOL  :
DISTRICT, BARBARA BURKE       :
STEVENSON, individually and   :
in her official capacity as   :
Superintendent of the New Hope:
Solebury School District,     :
DR. DEMARIS FOOTE,            :
individually and in her       :
official capacity as Director :
of Pupil Services, KENNETH M. :
SILVER, individually and in   :
his official capacity as      :
Principal of the New Hope-    :
Solebury Elementary School    :

## MEMORANDUM AND ORDER

JOYNER, J.                                      March 13, 2008

　　　This case is before the Court for disposition of the
parties' cross-motions for summary judgment on the administrative
record.  For the reasons which follow, we shall grant the
defendants' motion and deny that of the plaintiffs.

### Factual Background

　　　Travis G. is a now-eight-year-old student attending the New
Hope-Solebury Elementary School in the New Hope-Solebury (Bucks
County) School District.  When he was between 12 and 18 months of

age, concerns arose with respect to Travis's development in that his language was not developing and he was easily upset, at which times he would go into corners and/or take to his bed and sleep for long periods of time.  He was ultimately seen by a developmental specialist at Bryn Mawr Hospital and diagnosed with autism.[1]  Travis began receiving early intervention therapies and services for his autism through the Bucks County Intermediate Unit ("IU") commencing in December, 2002.  Under an Individualized Education Program ("IEP") that was developed at or around that same time, Travis was attending a regular pre-school for several hours three days a week with a one-on-one aide and receiving applied behavior analysis ("ABA") and verbal behavior ("VB")instruction services at home in the mornings on a one-to-one basis, as well as occupational and physical therapy.  Under this early intervention IEP, he was receiving some 30 hours per week of ABA/VB therapy and the parties appear to agree that Travis progressed well under this program.

Travis was eligible to enter kindergarten in the fall of 2005.  In the summer before the beginning of the school year, the

---

[1]   In support of their summary judgment motion and citing Amanda J. ex rel. Anne J. v. Clark County School District, 267 F.3d 877, 883 (9th Cir. 2001) and County School Board of Henrico County, Virginia v. Z.P. ex rel. R.P., 399 F.3d 298, 300-301 (4th Cir. 2005), the plaintiffs describe autism "as a developmental disorder that affects a child's ability to communicate, use imagination and establish relationships with others; children with autism generally have significant deficits in language development, behavior, and social interaction.  One of the primary ways that children learn is through imitation of the actions and sounds that they see and hear.  Autistic children, however, generally have a greatly reduced ability to imitate."

defendants[2] proposed an IEP under which Travis would receive ABA and VB services in an autistic support class operated by the IU known as the Disney Program, to be followed by participation in a regular kindergarten class in his home elementary school.   The District also proposed reducing the occupational therapy ("OT") services from one hour to one-half hour per week.   After discussing the autistic support class with the teacher and learning that most of the students were not functioning at the same level as Travis, his parents, Plaintiffs Joseph and Stella G., rejected this proposal requesting instead that the ABA services be provided in his neighborhood elementary school, followed by attendance in the regular kindergarten class accompanied by a 1:1 aide.   The G.'s also objected to the reduction in the OT services and sought due process.   A meeting to resolve these issues was eventually held between the G.'s, and Defendants Drs. Burke-Stevenson and Foote in mid-October, 2005 with the result that an interim IEP was agreed to which provided that Travis would receive two hours per school day of one-to-one ABA/VB services in his home[3] and would attend a regular

_____

[2]   Given that nearly all of the allegations against the individual defendants here involve their official capacities as representatives of the New Hope-Solebury School District, all of the defendants shall be hereafter referred to as "the District" or the "School District," except where otherwise noted.

[3]   In their complaint, Plaintiffs aver that they did not notice that the proposed interim IEP provided for a reduction in the amount of ABA/VB services from 15 hours to 10 hours per week and that they specifically rejected the proposed reduction of occupational therapy (OT) services from 1 hour to ½ hour per week.  They further allege that although they only

kindergarten class accompanied by a 1:1 aide in the afternoon at his neighborhood school, New Hope-Solebury Elementary.  Because this interim program was not agreed to until after the start of the regular school year, Travis did not start attending kindergarten until October 18, 2005 and he did not receive the required amount of ABA/VB services between September 6 and October 18, 2005.  However, despite the language of the interim IEP, he did thereafter receive three hours per day of ABA/VB therapy.

In February, 2006, the District proposed an IEP for the balance of the school year and for the summer which apparently called for a reduction in Travis' ABA/VB therapy and for a six-week Extended School Year ("ESY") program at the Newtown Elementary School run by the Intermediate Unit at which Travis would be provided with speech and occupational therapies on a one-to-one and "push-in" setting by both a one-to-one special education teacher and occupational therapist.  Mr. and Mrs. G. rejected the proposed IEP and sought due process because they believed that Travis required at least 3 hours of ABA/VB therapy per day and because they believed that the ESY program was not the least restricted environment ("LRE") for their son given that the classroom to which he would be assigned would have no typical students present.  Rather, the G.'s sought to have the district

partially consented to the interim IEP, it was nevertheless implemented by the District. (Pl's Complaint, ¶s34-35).

send Travis to a six-week art camp program run by Ravens Run offering a variety of art, acting and dance activities with typical peers, at which the director had assured them that Travis could receive the three hours of daily ABA and occupational therapies to be provided by trained personnel from the District.

Following four days of due process hearings on May 5, May 24, June 2 and June 8, 2006, the Special Education Hearing Officer issued his decision on July 5, 2006. At that time, the Hearing Officer found that the proposed February, 2006 IEP was appropriate and should be implemented. The decision further ordered:

1.  That the School District should compensate Travis' parents for the $300 cost of their independent occupational therapy examination.

2.  That ESY services should not have a break longer than two weeks after school ends in the Spring and two weeks before the fall semester begins and that the ESY program should include 30 minutes of direct occupational therapy and 30 minutes of consultation, 30 minutes of consultation and 30 minutes of direct speech and language therapy and 1.5 hours of ABA daily. A special education teacher with ABA and autistic support experiences was to be provided for the ESY classroom and if the ESY classroom experiences end before the 2 week period before school resumes, ABA time was to be extended to three hours per day for that interim period.

3.  The parents' request for compensatory education (for that period of time between September 6 and October 18, 2005) was denied.

4.  The parents' request for attendance at the Ravens Run Art Camp at the district's expense was denied.

5.  Travis' parents were to have the same visitation rights to the classroom as all other parents and were to be

permitted to be accompanied by their consultants at IEP meetings.

The Plaintiffs filed exceptions to the following four findings by the Hearing Officer in their appeal of his decision to the Commonwealth of Pennsylvania, Special Education Appeal Panel: (1) that the February 2006 proposed IEP was appropriate and should be implemented; (2) that the proposed placement for the delivery of ESY services (*i.e.,* the ESY program at Newtown Elementary instead of the Ravens Run Camp) was appropriate; (3) that the student was not entitled to compensatory education; and (4) that the level of ABA and OT services provided in the proposed IEP is adequate.  On August 23, 2006, the Appeals Panel affirmed the Hearing Officer's decision in all respects. Plaintiffs thereafter filed a complaint in this Court appealing that decision on November 21, 2006 and seeking relief under the Individuals with Disabilities Education Act, 20 U.S.C. §1400, *et. seq.*, ("IDEA"), the Americans with Disabilities Act, 42 U.S.C. §12101, *et. seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, and the Civil Rights Act of 1964, as amended, 42 U.S.C. §1983.  Agreeing that no further discovery was necessary and that this case may be decided on the basis of the administrative record, the parties filed their motions for summary judgment in September, 2007.

## Standards Governing Summary Judgment Motions

Summary judgment is appropriate where, viewing the record in

the light most favorable to the non-moving party, there is no
genuine issue of material fact and the moving party is entitled
to judgment as a matter of law.  Michaels v. New Jersey, 222 F.3d
118, 121 (3d Cir. 2000); Jones v. School District of
Philadelphia, 198 F.3d 403, 409 (3d Cir. 1999).  Indeed, the
standards to be applied by district courts in ruling on motions
for summary judgment are clearly set forth in Fed.R.Civ.P. 56(c),
which states, in pertinent part:

> "....The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material fact
> and that the moving party is entitled to a judgment as a
> matter of law.  A summary judgment, interlocutory in
> character, may be rendered on the issue of liability alone
> although there is a genuine issue as to the amount of
> damages."

Under this rule, a court is compelled to look beyond the
bare allegations of the pleadings to determine if they have
sufficient factual support to warrant their consideration at
trial.  Liberty Lobby, Inc. v. Dow Jones & Co., 838 F.2d 1287
(D.C.Cir. 1988), cert. denied, 488 U.S. 825, 109 S.Ct. 75, 102
L.Ed.2d 51 (1988); Aries Realty, Inc. v. AGS Columbia Associates,
751 F.Supp. 444 (S.D.N.Y. 1990).  In considering a summary
judgment motion, the court must view the facts in the light most
favorable to the non-moving party and all reasonable inferences
from the facts must be drawn in favor of that party as well.
Troy Chemical Corp. v. Teamsters Union Local No. 408, 37 F.3d

7

123, 126 (3rd Cir. 1994); <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460 (3rd Cir. 1989); <u>U.S. v. Kensington Hospital</u>, 760 F.Supp. 1120 (E.D.Pa. 1991).  It should be noted that "material" facts are those facts that might affect the outcome of the suit under the substantive law governing the claims made.  An issue of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" in light of the burdens of proof required by substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 2510, 2512, 91 L.Ed.2d 202 (1986);  <u>The Philadelphia Musical Society, Local 77 v. American Federation of Musicians of the United States and Canada</u>, 812 F.Supp. 509, 514 (E.D.Pa. 1992).  Thus, a non-moving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial.  <u>Gleason v. Norwest Mortgage, Inc.</u>, 243 F.3d 130, 138 (3d Cir. 2001).

## Discussion

As noted, the plaintiffs filed this suit alleging first, that the hearing officer and the appeal panel erred in finding that the IEP first proposed by the District in February 2006 was an appropriate one for Travis and in directing that it be implemented, in denying them compensatory educational services and in denying their request to have Travis attend the Ravens Run camp for his summer 2006 ESY program at District expense.  They

additionally allege that the defendants retaliated against them for exercising their legally protected rights to participate in the development of the IEP and to challenge the proposed IEP by refusing to allow their consultant, Ms. Vesloski, to observe Travis in his kindergarten class, by restricting their own observations of Travis in class and in not permitting them to have regularly scheduled parent-teacher conferences with Travis' teachers unless Dr. Foote is in attendance.  In so doing, Plaintiffs submit that the defendants have violated not only the relevant portions of the IDEA, but also Section 504 of the Rehabilitation Act, the ADA and Section 1983 as well.  We consider first the plaintiffs' claims under the IDEA.

    1.  *IDEA Claims*.

The IDEA was designed to overcome the pattern of disregard and neglect disabled children historically encountered in seeking access to public education.  <u>Schaffer ex rel. Schaffer v. Weast</u>, 546 U.S. 49, 126 S.Ct. 528, 538, 163 L.Ed.2d 387 (2005) citing, *inter alia*, 20 U.S.C. §1400(c)(2)(congressional findings).  The IDEA conditions a state's receipt of federal funds for special education programs on its implementation of "policies and procedures to ensure that ... a free appropriate public education is available to all children with disabilities..."  <u>Melissa S. by Karen S. v. School District of Pittsburgh</u>, No. 05-1759, 183 Fed. Appx. 184, 186-187, 2006 U.S. App. LEXIS 14118 at *4 (3d Cir.

June 8, 2006), quoting 20 U.S.C. §1412(a)(1)(A).  "The term 'free appropriate public education' means special education and related services that - (A) have been provided at public expense, under public supervision and direction and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title."  20 U.S.C. §1401(9).  The Third Circuit has otherwise described a free appropriate public education as consisting "of educational instruction specifically designed to meet the unique needs of the handicapped child, support by such services as are necessary to permit the child to 'benefit from the instruction.'"  Melissa S., supra., quoting W.B. v. Matula, 67 F.3d 484, 491 (3d Cir. 1995).

     The "free appropriate public education" required by the Act is tailored to the unique needs of the handicapped child by means of an "individualized education program" or "IEP."  Board of Education v. Rowley, 458 U.S. 176, 181, 102 S.Ct. 3034, 3038, 73 L.Ed.2d 690 (1982).  "The IEP consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive."   Melissa S., supra., quoting Polk v. Central Susquehanna Intermediate Unit

16, 853 F.2d 171, 173 (3d Cir. 1988).

It is clear that the IDEA affords District Courts jurisdiction to hear civil actions brought by parties aggrieved by decisions rendered by hearing officers from due process hearings and from appeals before the State educational agency without regard to the amount in controversy.  20 U.S.C. §1415(i)(2).  When deciding such an IDEA case, however, the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ.  L.E. v. Ramsey Board of Education, 435 F.3d 384, 389 (3d Cir. 2006).  Thus, the Court must "defer to the ALJ's factual findings unless it can point to contrary non-testimonial extrinsic evidence on the record."  M.S. Mullica Township Board of Education, 485 F.Supp.2d 555, 566 (D.N.J. 2007), *aff'd*, 2008 U.S. App. LEXIS 2737 (3d Cir. Feb. 7, 2008), quoting S.H. v. State Operated School District of Newark, 336 F.3d 260, 270 (3d Cir. 2003).   The Court is not, however, to substitute its own notions of sound educational policy for those of local school authorities.  Daniel S. v. Council Rock School District, Civ. A. No. 06-3531, 2007 U.S. Dist. LEXIS 81187 at *5 (E.D. Pa. Oct. 25, 2007), citing MM v. School District of Greenville County, 303 F.3d 523, 530-31 (4th Cir. 2002).  At the administrative hearings challenging an IEP, the burden of proof lies upon the party seeking relief.  Schaffer, 126 S.Ct. at 537.  Thus, the party

challenging an administrative decision faces two hurdles: (1) overcoming the presumption that the Hearing Officer's findings were correct and (2) proving that the proposed IEP was inappropriate.  Andrew M. v. Delaware County Office of Mental Health and Mental Retardation, 490 F.3d 337, 345 (3d Cir. 2007).

In this case, the gravamen of Plaintiffs' complaint is that the hearing officer and the educational appeals panel erred in finding that the IEP proposed by the District for Travis' education for the second half of the 2005-06, summer 2006 and first half of the 2006-07 school years was appropriate and should be implemented and in finding that the District provided Travis with a FAPE for the 2005-06 school year.[4]  They further challenge the District's denial (and the upholding of that decision by the Hearing Officer and the Appeal Panel) of compensatory education.

The issue of whether an IEP is appropriate is a question of fact.  S.H. v. State-Operated School District of Newark, 336 F.3d 260, 271 (3d Cir. 2003), citing Carlisle Area School District v. Scott P., 62 F.3d 520, 526 (3d Cir. 1995).  Generally speaking, a school district is required to show only that the proposed IEP would provide a meaningful educational benefit and not that it would be the best possible education. Id.; Daniel S., 2007 U.S. Dist. LEXIS 81187 at *9.  This requires more than just a de

---

[4]   In essence, the plaintiffs' challenges to the proposed summer placement at the Newtown Elementary School and the reduction in the amount of ABA/VB and OT services are inherently included in their argument that the proposed IEP was inappropriate.

*minimis* educational benefit and mandates the undertaking of a student-by-student analysis that carefully considers the individual student's abilities.  <u>Ridgewood Board of Education v. N.E.</u>, 172 F.3d 238, 248 (3d Cir. 1999); <u>Daniel S.</u>, at *10 citing <u>M.C. v. Central Regional School District</u>, 81 F.3d 389, 393 (3d Cir. 1996).

In support of their motion for summary judgment or for judgment on the administrative record, the plaintiffs first argue that the Hearing Officer and Appeals' Panel's decisions are not entitled to deference because they failed to address the evidence of regression on Travis' part after the level of ABA services were reduced and failed to specifically discuss the testimony by Dr. Sundberg and Ms. Velsloski that the level of ABA services provided were not sufficient.  Rather, plaintiffs argue, the hearing officer and appeals panel appeared to have accepted "the minimal progress in the area of social interaction on Travis' part as acceptable."  (Pl's Brief in Support of Motion for Summary Judgment at p. 14).

This argument is not in keeping with our findings after a review of the administrative record.  Rather, it appears that the hearing officer in this case carefully considered the testimonies of the plaintiffs' experts and consultants and the consultants and witnesses proffered by the School District.  While acknowledging that the plaintiff's expert Dr. Sundberg, opined

that ideally, a student such as Travis should be receiving intense 1:1 ABA services for 3 hours per day in situations that involve classrooms, the Hearing Officer's Decision reflects that he also considered the opinions of Dr. Shea, the IU consultant and Ms. Barnes, the IU curriculum consultant, that many of the activities that are utilized in the 1:1 ABA can be carried out in the classroom and in consultation with the staff and that many skills that may be mastered in the 1:1 setting are difficult to generalize in the inclusive classroom setting with the result that they have to be re-learned in the more general regular education environment.  (Hearing Officer's Decision, p. 10). Given that the proposed IEP retains a special education teacher who is knowledgeable in ABA and autistic support working one on one with Travis, the Hearing Officer found that the proposed program was appropriate.

     The plaintiffs also specifically challenge the Hearing Officer and Appeals Panel's findings that the ESY placement was appropriate on the basis that it was not the least restrictive environment.[5]  It is axiomatic that under the mainstreaming

---

     [5]  Although it is less than clear that the Third Circuit requires that LRE be considered in an ESY placement, the Hearing Officer nevertheless held that it should be, citing Reusch v. Fountain, 872 F.Supp. 1421, 1428 (D. Md. 1994)(noting that Maryland regulations expressly require that ESY "be provided pursuant to a properly developed IEP as soon as possible and in accordance with LRE requirements...") The School District does not challenge this.

component of the IDEA,[6] a disabled child is "require[d] to be
placed in the least restrictive environment ("LRE") that will
provide him with a meaningful educational benefit." L.E. v.
Ramsey, 435 F.3d at 390, quoting T.R. V. Kingwood Township Board
of Education, 205 F.3d 572, 578 (3d Cir. 2000).  The Third
Circuit has adopted a two-part test for determining whether a
School District complies with the LRE requirement.  The first
step is for the court to determine whether the school can educate
the child in a regular classroom with the use of supplementary
aids and services.  If not, the next step is to decide whether
the school is mainstreaming the child to the maximum extent
possible.  S.H., 336 F.3d at 272 citing Oberti v. Board of
Education of the Borough of Clementon School District, 995 F.3d
1204, 1215 (3d Cor. 1993).  To answer the first question, the
courts must consider "(1) the steps the school district has taken
to accommodate the child in a regular classroom; (2) the child's
ability to receive an educational benefit from regular education;
and (3) the effect the disabled child's presence has on the

---

[6]   Specifically, the Act provides:

"To the maximum extent appropriate, children with disabilities,
including children in public or private institutions or other care
facilities, are [to be] educated with children who are not disabled, and
special classes, separate schooling, or other removal of children with
disabilities from the regular educational environment occurs only when
the nature or severity of the disability of a child is such that
education in regular classes with the use of supplementary aids and
services cannot be achieved satisfactorily."

20 U.S.C. §1412(a)(5)(A).

regular classroom." L.E., 435 F.3d at 390, quoting T.R. v. Kingwood, 205 F.3d at 579.

The record in this matter reflects that the District is under no obligation to provide extended school year services to non-disabled students.  Consequently, the District argued and the Hearing Officer and Appeals Panel found, the District could not mainstream Travis but it could provide him with an ESY program (albeit without non-exceptional peers) that would help maintain his current skills level in accordance with his IEP goals.

We are mindful of the nature of our scope of review.  Again, the case law is clear that we must defer to and give due weight to the ALJ's factual findings unless we can point to contrary non-testimonial extrinsic evidence on the record and that we cannot substitute our own notion of sound educational policy for those of local school authorities.   Although neither the Hearing Officer nor the Appeals Panel specifically discussed Ms. Vesloski's testimony in the discussion portions of their decisions, her testimony and qualifications are discussed in detail in the Findings of Fact contained in the Hearing Officer's decision.  Contrary to the plaintiffs assertions, we note that at Nos. 20, 21 and 33 of his factual findings, the Hearing Officer did observe that when Travis' ABA program was reduced from 3 to 2 hours daily and when his OT and other services were cut for 3 weeks, his behavior and functional communication deteriorated.

The Hearing Officer further noted that the plaintiffs' own occupational therapy expert agreed with the recommendation that there be 30 minutes of direct OT a week and 30 minutes a week of consultation with the classroom teacher and that Ms. Vesloski had no objection to the goals of the proposed IEP but only to where these goals would be accomplished on a continuous daily basis. He therefore also found the proposed IEP appropriate in so far as it called for 30 minutes direct and 30 minutes of OT consultation a week.

In so far as the ESY program is concerned, the only evidence as to a proposed curriculum or the nature and content of activities was that provided by the School District's witnesses and a rough description of what the Raven's Run camp director told Travis' parents.  While the District provided evidence as to the types of classes and instructional therapies Travis would receive between the hours of 9 and 2 daily at the Newtown Elementary School in both a small group/class-setting and one-on-one with a special education teacher, there was no testimony from the director or other camp representative as to what the camp proposed to offer or how camp activities were expected to assist in the implementation of the goals set forth in Travis' IEP.  It thus appears to this Court that the Hearing Officer properly considered the testimony of *all* of the witnesses in the case and after weighing the evidence presented, found the proposed IEP to

be appropriate.  Applying the same standard of review as we now
do, the Appeals Panel saw no reason to disturb this conclusion.
After thoroughly reviewing the testimony of all of the
plaintiffs' and the District's witnesses and finding no contrary
documentary or other evidence, we likewise conclude that while
the proposed IEP may not offer Travis the best possible
education, it is nevertheless more than adequate to advance him a
meaningful educational benefit. We therefore must affirm the
finding of both the Hearing Officer and the Educational Appeals
Panel that the proposed IEP is appropriate and should be
implemented.

Turning last to the issue of whether Travis is entitled to
compensatory education, we are likewise compelled to affirm the
findings of the first two tribunals.  Compensatory education is a
by-product of the school districts' obligation under the IDEA to
provide every student with a free appropriate public education.
For a student with a disability, when an IEP fails to confer some
(*i.e.* more than *de minimis*) educational benefit, that student
has been deprived of the appropriate education guaranteed by
IDEA. M.C. and G.C. v. Central Regional School District, 81 F.3d
389, 396 (3d Cir. 1996).  A school district that knows or should
know that a child has an inappropriate IEP or is not receiving
more than a *de minimis* educational benefit must correct the
situation and if it fails to do so, a disabled child is entitled

to compensatory education for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem.  Id., at 397.  A disabled student's right to compensatory education therefore accrues when the school knows or should know that the student is receiving an inappropriate education.  Ridgewood, 172 F.3d at 250; Daniel S. v. Newtown, 2007 U.S. Dist. LEXIS at *15.

At bar, there was testimony from the supervisor of the Intermediate Unit and copies of time sheets from the various IU service providers which demonstrate that, subsequent to Travis' commencement of his education at New Hope-Solebury Elementary, the School District provided him with many more hours of ABA/VB and OT than were called for in the interim IEP.  We thus discern no error in the findings of the Hearing Officer and the Appeal Panel that Travis has already received any and all compensatory education to which he would otherwise be entitled for that period between early September and late October 2005 before the interim IEP was implemented.

   2.   *Plaintiffs' Claims Under §1983, §504 of the Rehabilitation Act and the Americans with Disabilities Act*

In addition to seeking the reversal of the Appeal Panel's decision to uphold the findings of fact and legal conclusions of the Hearing Officer, the plaintiffs also advance claims for compensatory and punitive damages under §1983 for the defendants' purported denial of Travis' rights to a FAPE and to reasonable

accommodations under the ADA and Section 504 of the
Rehabilitation Act, and for retaliating against them for
exercising their rights under the IDEA.  Defendants now argue and
it appears that the plaintiffs do not dispute[7] that such claims
are no longer cognizable.  We agree.

In <u>A.W. v. Jersey City Public Schools</u>, 486 F.3d 791 (3d Cir.
2007), the U.S. Court of Appeals for the Third Circuit had
occasion to re-visit its earlier decision in <u>W.B. v. Matula</u>, 67
F.3d 484 (3d Cir. 1995) that an action could be maintained
against school officials under §1983 for violations of the IDEA
and §504 of the Rehabilitation Act.  In that case, the Third
Circuit decided to abrogate those portions of <u>Matula</u> in which it
held that such actions could be maintained under §1983.
Specifically, the Court reasoned, thanks to guidance provided by
the Supreme Court's decision in <u>City of Rancho Palos Verdes v.</u>
<u>Abrams</u>, 544 U.S. 113, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005),
that because the IDEA and §504 both create express, private means
of redress, a §1983 action is not available to remedy violations
of the rights created by those statutes.  <u>A.W.</u>, 486 F.3d at 802,
806.  <u>See Also</u>, <u>Enright v. Springfield School District</u>, Civ. A.
No. 04-1653, 2007 U.S. Dist. LEXIS 95006 at *13-*14, n.2 (E.D.
Pa. Dec. 27, 2007).

It has been said that an ADA claim is "the analogue" of a

---

[7]   The plaintiffs' brief is silent on this issue.

Section 504 claim because the ADA "extends the nondiscrimination rule of Section 504 to services provided by any 'public entity' (without regard to whether the entity is a recipient of federal funds" and because the ADA explicitly provides that "the remedies, procedures and rights under Title II of the ADA are the same as those under §504 and that the ADA is not to be construed to provide a lesser standard than the standards applied under §504." Chambers v. School District of Philadelphia, Civ. A. No. 05-2535, 2007 U.S. Dist. LEXIS 88003 at *16-*17, n/4 (E.D. Pa. Nov. 30, 2007), quoting Jeremy H. v. Mount Lebanon School District, 95 F.3d 272, 279 (3d Cir. 1996) and Kevin M. v. Bristol Township School District, Civ. A. No. 00-6030, 2002 U.S. Dist. LEXIS 22509 at *9 (E.D. Pa. Jan. 16, 2002).  For these reasons, Courts have treated the two claims as analogous and we consequently now find that the plaintiffs cannot maintain their claims against these defendants for compensatory and punitive damages under any of the foregoing statutes.  See, id.; C.J.G. v. Scranton School District, No. 3:07-1314, 2007 U.S. Dist. LEXIS 88719 (M.D. Pa. Dec. 3, 2007)(dismissing plaintiffs' claims for compensatory and punitive damages under IDEA, §1983, Section 504 and ADA).

    For all of the above-stated reasons, the defendants' motion for disposition on the administrative record and for summary judgment shall be granted while the plaintiffs' motion for

summary judgment or for judgment on the administrative record shall be denied pursuant to the attached order.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
TRAVIS G., a child with a      : CIVIL ACTION
disability, by his Parents,    :
JOSEPH G. and STELLA G., and   :
JOSEPH G. and STELLA G. on     :
their own behalf               : NO. 06-CV-5134
                               :
        vs.                    :
                               :
THE NEW HOPE-SOLEBURY SCHOOL   :
DISTRICT, BARBARA BURKE        :
STEVENSON, individually and    :
in her official capacity as    :
Superintendent of the New Hope:
Solebury School District,      :
DR. DEMARIS FOOTE,             :
individually and in her        :
official capacity as Director  :
of Pupil Services, KENNETH M.  :
SILVER, individually and in    :
his official capacity as       :
Principal of the New Hope-     :
Solebury Elementary School     :
```

**<u>ORDER</u>**

<u>      </u>AND NOW, this    13th     day of March, 2008, upon

consideration of the Cross-Motions of the Parties for Summary

Judgment or for Judgment on the Administrative Record (Docket

Nos. 15 and 16) and for the reasons articulated in the preceding

Memorandum Opinion, it is hereby ORDERED that the Defendants'

Motion is GRANTED, the Plaintiffs' Motion is DENIED and Judgment

is entered in favor of the Defendants as a matter of law on the

administrative record and against the Plaintiffs in no amount.

BY THE COURT:


s/J. Curtis Joyner
J. CURTIS JOYNER,        J.